## JOSEPH S. WILSON, *Sheriff, etc.,* v. MARY FULLER.

1. EVIDENCE—PRACTICE; *Objections to Evidence should be stated when Evidence offered.* As a general rule the grounds of objection to the introduction of evidence should be stated when the evidence objected to is offered; and if no reason is given or ground stated the court is not bound to consider the objection.

2. ASSIGNMENT OF ERROR; *Waiver.* Where errors are assigned in the petition in error but no reference is afterwards made to them either by oral argument or in the brief of counsel for the plaintiff in error, the supreme court will take no notice of them.

3. PRACTICE, *Where Record is incomplete.* Where certain instructions are asked to be given to the jury and the court refuses to give them, the supreme court cannot determine whether the court below erred to the prejudice of the party asking them, unless all the instructions given are brought to the supreme court.

4. ———— *Instruction; Controverted Facts.* It is not error for the court to refuse to give an instruction to the jury which embodies a question of fact controverted by both the pleadings and the evidence.

5. ———— *Modifying Instructions.* Where the record shows that an instruction was asked and given with a "statutory modification," but does not show what that "statutory modification" is or was, it will be presumed by the supreme court that the modification was correct.

6. SALE AND PURCHASE; *Intent of Vendor and Vendee.* A *bona fide* purchaser of personal property, without notice of any fraudulent intentions on the part of the vendor, obtains a good title to the property notwithstanding the vendor may have sold the property with intent to defraud his creditors.

7. FACTS FOR THE JURY; *When not reviewable.* Where there is some evidence tending to prove a fact, as, that a certain transfer of property was for a sufficient consideration, and not a gift, the question of whether the fact is established is for the jury and not for the court; and where the jury have established the fact by their verdict, and no objection has been made in any form in the court below to the verdict, or to the judgment of the court, the supreme court will not review the evidence to determine whether the fact is established by sufficient evidence or not.

8. INSTRUCTIONS; *Presumption, when Evidence is not saved; Verdict.* Where the record does not purport to contain all the instructions given by the court to the jury, and where those that it does contain are not erroneous, it must always be presumed that the proper instructions were given. And where no motion to set aside the verdict or for a new trial is made in the court below, it must be presumed that the verdict was amply sustained by sufficient evidence.

9. PRACTICE; *What questions will be reviewed.* Where a question is raised

for the first time in the supreme court it will always be looked upon with great disfavor; the rule being, that the supreme court will hear and determine such questions only as have been passed upon by the court below.

10. PLEADINGS; *Issue; When Reply is Waived.* Where a petition and answer had been filed in the court below and the parties proceeded to trial in all respects as though the answer had been controverted by filing a reply, and where a verdict and judgment have been rendered for the plaintiff, and the attention of the district court has never been called in any manner to the fact that no reply has been filed, the supreme court will not entertain the question raised for the first time in that court that no reply has been filed.

11. ——— *Reply not Necessary when Answer states no defense.* A reply is not necessary where the answer is only a general denial, or where the answer states no defense. And an answer in replevin setting forth that there was another action pending in the same court in favor of the same plaintiff but against a third party, not the defendant, for the replevin of the same property, and that this third party held and justified as a mere bailee and receiptor of the defendant, does not state any defense.

12. ——— *Gist of Action of Replevin.* The gist of the action of replevin in Kansas is the wrongful detention of the property on the part of the defendant as against the plaintiff. And the plaintiff in order to maintain the action must allege in his petition, interest in himself, right of immediate possession, and detention on the part of the defendant; and a general denial on the part of the defendant is sufficient to put in issue all these allegations and to throw the burden of proving them on the plaintiff.

13. ——— *Averments equivalent to General Denial.* An answer in replevin setting forth that the property in controversy is the property of a third person, and that the defendant as sheriff has levied an attachment on it and holds it as the property of said third person, is in effect only a general denial, and needs no reply.

14. ERROR—*Unless Assigned, will be deemed Waived.* The supreme court will on a proper assignment of error review a judgment, although no exception has been taken to it in the court below; and where the judgment is in replevin the court will order that the judgment be entered in the alternative, when it has not been so entered; but where no error has been assigned as to the form of the judgment the supreme court will not examine the error, nor make any such order.

### Error from Labette District Court.

REPLEVIN, brought by *Mary Fuller* to recover possession of a span of horses, double harness, and wagon. The plead-

ings are sufficiently stated in the opinion. The record shows that one J. C. Munkers brought suit in the district court against L. Abel and Elias C. Boudinot, and procured an order of attachment therein upon which *Wilson*, as sheriff, had seized the property in question as the property of said Boudinot; that the sheriff placed the property in the possession of John Secrest, for his own convenience, taking a receipting bond from Secrest therefor; that *Mrs. Fuller*, plaintiff, had commenced an action of replevin against Secrest for the property, which action was still pending and undetermined; that this action was afterwards commenced against *Wilson*, as sheriff, for the same property; that at the time this action was commenced the property was in the possession of *Wilson*, as sheriff; that *Wilson* had retained possession by giving to the coroner an undertaking as provided by § 199 of the code; and that he had, since giving such undertaking, sold said property as sheriff on an order of sale issued upon a judgment which had been rendered in said suit of "Munkers v. Abel & Boudinot." This action was tried in the district court at the June Term 1871. Plaintiff's evidence tended to show that she was the owner of the property, and that she had acquired title thereto from Boudinot, some time before the commencement of the Munkers suit. The evidence on the part of *Wilson* tended to show that there had been no legal sale or transfer of the property by Boudinot to *Mrs. Fuller*, and that Boudinot was the owner thereof at the time the same was taken on the attachment. The evidence is not set out in full in the bill of exceptions. The defendant asked the court to instruct the jury as follows:

"1st. That there was no actual nor continued change of possession of the horses from Boudinot to Mary Fuller shown by the evidence.

"2d. That there was not sufficient consideration shown for the transfer of the horses from Boudinot to Mrs. Fuller within the statute.

"3d. That if the jury find as a matter of fact that there was no actual and continued change of possession of the horses after the transfer as claimed, and no valuable and

adequate consideration was paid, then the transfer is void, and the plaintiff cannot recover.

" 4th. That the transfer of the horses was in legal effect a gift, and could only take effect on delivery of the property; and if the jury find that there was no delivery, then or afterwards, there was no time when the gift took effect.

" 5th. That it is not possible for the plaintiff and Perry Fuller to have both owned the property at the same time; and the claim by plaintiff at one time she owned them, and at another time Perry Fuller owned them, cannot be tolerated, and she must be held to have established title in neither.

" 6th. That the former action pending between this same plaintiff and John Secrest, bailee of defendant, for the same property, is a full defense to this action.

" 7th. That if the jury believe from the evidence that Boudinot attempted to transfer to plaintiff the horses in question in order to put them beyond the reach of process which might be issued upon the judgment to be rendered in the case then pending in favor of the government against him, then the transfer is for that reason void, and the plaintiff is not entitled to recover."

The court refused the 1st, 2d, 4th, 5th, and 6th of said instructions, and gave the 3d and 7th with some modifications and qualifications, which are stated in the opinion. The court gave the following instructions:

" 1st. If you find from the evidence that at the commencement of this suit Mary Fuller was the owner of the property, then she is entitled to recover unless defendant has shown some sufficient reason entitling him to have possession of it.

" 2d. If you shall find the property to be that of Mary Fuller, then I instruct you that the defendant had no more right to seize it as he did, upon process against other parties, than if it belonged to any other person not a party to such process.

" 3d. If you shall find from the evidence that in payment of any debt, or in satisfaction of any honest claim Mrs. Fuller held against Boudinot, that he turned out the team and property in question to Mrs. Fuller, then the title to the property passed to Mrs. Fuller.

" 4th. In order to vitiate the title of Mrs. Fuller as being acquired fraudulently, although Boudinot may have been pressed by debts, and to avoid the payment thereof he trans-

ferred the property to Mrs. Fuller, yet, unless she knew of the fact, and unless she participated in the fraud, her title is not affected thereby."

*Wilson* excepted to the refusal to give the instructions asked by him, to the modifications and qualifications of the 3d and 7th, and to the instructions given by the court. The jury found for the plaintiff, and assessed the value of the property at $357.56, and the plaintiff's damages at $3.00. Judgment was entered on the verdict as follows: "It is therefore considered, ordered, and adjudged, that said plaintiff have and recover of and from said defendant the said sum of $360.56, and the costs of this action to be taxed, and execution is awarded therefor." No objection was made to the form of the judgment. No motion for a new trial. Defendant *Wilson* brings the case here on error for review.

*Ayres & Fox*, for plaintiff in error:

1. The alleged transfer by Boudinot, the execution-debtor, to the plaintiff, of the team, being without consideration, and unaccompanied by an actual change of possession, was void as to the defendant, who represented a subsequent creditor, within the words of the statute, as matter of law, and the verdict covering the same is erroneous. See our Statute of Frauds, Gen. Stat., ch. 43, § 3; 19 Wend., 444; 4 N. Y., 580; 20 Barb., 26; 3 Sandf., 69; 6 Hill, 441.

The court erred in refusing to give the 1st and 2d instructions asked by defendant: *Bush v. Fox, et al.*, N. Y. Sup. Ct. And in refusing the 3d instruction as asked, and in giving it with indefinite qualifications and modifications: 12 Barb., 94; 19 N. Y., 123; 5 Kas., 608.

2. The voluntary transfer of the team, the last remnant of the failing debtor's property, pending the case of the United States against him, removed directly the only means of payment from his creditors. This afforded a conclusive presumption of an intent to delay, hinder, and defraud his existing and subsequent creditors, and was fraudulent in law; 44 Barb., 498; and the principle that although fraud is a

question of fact for the jury, yet, whether the evidence tends to establish fraud, is always a question of law for the court: 25 Barb., 141; 26 id., 127; 11 How., 242.

3. The court erred in the instruction given that the title of the plaintiff was not affected unless she knew the facts, and participated in the fraud. It is well settled that the simple receiving from an insolvent of property, without consideration, voluntarily, requires no further proof of fraudulent intent to charge the grantee. 5 Kas., 340; 38 Barb., 302; 48 Barb., 237; 50 Barb., 512; 2 Paige, 54; Shep. Touchstone, 66.

Equally clear is the error in the third charge, where the court authorizes the jury to find the transfer to be on valuable consideration, and delivers over the defendant to a verdict of conjecture, sympathy, or gallantry, in the teeth of the evidence. 1 Denio, 583, 586; 10 How., 531; 12 Barb., 84. And in the first and second instructions, where the jury are given a license to find the property in the plaintiff, as against the defendant. 48 Barb., 412.

4. There was also error in refusing to charge the jury that they might find that, as between the plaintiff and Boudinot, her title to the team by gift was not consummated by delivery. 2 Kent's Com., 438; 33 N. Y., 581.

5. The district court should have instructed the jury to find for the plaintiff, as requested, according to the undisputed proofs and clear preponderance of the evidence; and for the omission a new trial should be granted. 2 Kas., 490; 5 id., 181; 17 N. Y., 9; 39 id., 117; 27 Barb., 528; 49 id., 583; 15 Abb., 251. The doctrine that a new trial cannot be granted if there is a scintilla of evidence to support the verdict, "is exploded." 34 How. Pr., 74; 1 Best & San., 437; 6 Ell. & Bl., 953; 3 C. B., (N. S.,) 146.

6. There was no reply. The defense stands admitted for lack of a reply; and the verdict against the admissions is error. Upon the pleadings defendant was entitled to a judgment.

7. The plaintiff below was bound, at her peril, to obtain

and enter a judgment in the alternative under § 185 of the code for a return of the property, or its value, etc.    5 Kas., 202; 23 Barb., 340; 57 id., 480; and the omission cannot be amended on error.    3 Wis., 399; 4 id., 150; 9 N. Y., 470.

*Bettis & Kelso,* for defendant in error:

1. Where the ground of objection to a question is not stated it is no error to overrule the objection.    In such cases, although the question might be obnoxious to an objection, the true objection must be stated, that the court may be advised to avoid error, and not entrapped into it.    If the ground of objection is not stated, the court above cannot and will not presume prejudicial error: 2 Kas., 198; 2 Iowa, 44; 20 id., 431, 562; 22 id., 498; 9 Mich., 500; 11 id., 327.

It was certainly not error to permit the questions to be asked, because the question of ownership was a fact involved in, and material to the issue.    It is just as competent and proper to give direct evidence of that fact, as to prove it by circumstances, such as possession, etc.    This principle, especially in these cases of alleged fraudulent sales, is fully established by the following authorities: 18 Iowa, 211; 19 Mich., 76; 14 N. Y., 567; 25 N. Y., 430; 30 N. Y., 625; 38 N. Y., 287.

2. There was no error in refusing to give the instructions prayed for by plaintiff in error.    The first instruction asked and refused does not involve a question of law at all, but a bare question of fact, and one which it was necessary for the jury to find.    It would have been gross error for the court to have instructed the jury how they should find on that question: *Horne v. The State,* 1 Kas.

Such an instruction can only be tolerated under our law, when there is an *entire* failure of evidence upon the point. The 2d instruction was also properly refused.    It would have been gross error to have given it.

The 3d instruction asked was given by the court "with the statutory modifications;" but what those modifications were

does not appear. If it is error for the court to give the law to the jury *as it is,* then the court erred. Those "statutory modifications" may be matters of substance or of form. If matter of substance, it would have been error for the court to have told the jury that the law as it formerly existed was the law of this case when such law had been modified by statute. In any case the modification not being shown, no prejudice to plaintiff in error will be presumed.

It was certainly an extraordinary request to ask a court to give the 4th instruction prayed for by plaintiff in error. An inspection of the partial evidence of the case will show that even the jury would have had great difficulty in finding the fact concealed in the instruction asked. The 5th instruction asked assumes the existence of a state of facts which did not exist, and then asks the court to instruct the jury that such state of facts cannot be tolerated. Of course it was properly refused—as was the 6th, that a suit against Secrest about the property involved in this suit is a bar to this action. The subject-matter of two actions may be the same, and yet the "cause of action" be very different. Gould's Plead., ch. 5, § 124. Again, the parties are not the same, and one suit pending cannot therefore be plead in bar of the other.

The error of the 7th instruction asked is, that it would make a transfer of property fraudulent in cases where the grantee was innocent of participation in the fraud. Such is not the law. To avoid a sale on the ground of fraud, the fraud must have been mutual. *Diefendorf v. Oliver,* 8 Kas., 365; *Adams v. Foley,* 4 Iowa, 54; 3 Iowa, 58; 48 Barb., 237.

3. The first defense of the answer is simply a general denial, which of course puts in issue the ownership of the property; the 2d defense alleges the title to the property to have been in E. C. Boudinot; the 3d defense is the pendency of an action against the bailee of the sheriff for the same cause of action.

The general denial puts in issue the title of Mrs. Fuller to the property. Under that issue she must prove her title, and

having made a *prima facie* case, the defendant might rebut by proving the title to be in Boudinot or anybody else. It is not necessary to file a replication to the general issue. The only issue in replevin from the sheriff is, "Is the plaintiff the owner and entitled to the possession of the property?" Under the old practice of answering "not guilty," it may have been necessary to have specially plead property in another; but certainly not under our system of general denial. The 2d defense is in effect the general issue, and such a plea is always bad: Stephens on Plead., 4th Am. ed., 418; Vin. Abr., Cert. in Pleas, E, 15; Bac. Abr., Pleas, "G," 3; Com. Dig., Pleader, E, 14; 3 Black. Com., 309. But such pleas were sometimes allowable at common law where they were made "colorable," that is, a fictitious and fraudulent title plead in the other party.

The answer that another action is pending against Secrest for the same cause of action, need not have been replied to, because it is not of itself a bar to this action. Certainly a judgment might be plead and would sometimes be efficacious; but the mere pendency of the action is not of itself a bar, for in that case, such a plea simultaneously entered in both suits, would bar both: 9 Johns., 221; 7 Bac. Abr., 635. The plea is only in abatement, and such pleas are not favored. Such pleas require the highest degree of certainty. Gould's Pleading, ch. 3, § 58; Bac. Abr., Pleas, I, 11. This degree of certainty applies to parties, time, place and subject-matter: Gould's Plead, ch. 3, §§ 57, 60.

The plaintiff in error cannot now avail himself of the want of a replication to the 2d and 3d pleas, even if such replication were necessary. An examination of the case develops the fact that if no replication was filed the plaintiff in error carefully concealed the omission in the court below. No objection was made to the entry of judgment upon the verdict; nor was any exception taken to the verdict as against the law or evidence. Errors which may be cured by the court below on motion for new trial, or in arrest of judgment, cannot for the first time be heard in this court. Civil code,

§ 306; 2 Kas., 161, 198, 337, 490.   It cannot but be observed that the first indication that a necessary denial had not been made is in the petition in error.   The case itself does not intimate that no replication was filed, except as it might be inferred from its absence from the case.   But this is a question of fact and not of law; and a party cannot hold back and conceal facts from the court and jury—try his case on the merits, and then in the supreme court for the first time spring his technical objection.   It amounts to a trap deliberately set to catch the court, jury and adverse party.   If the plaintiff did not reply, the defendant did not avail himself of that fact before the jury, and hence his negligence (to use a mild term) is contributory.

The opinion of the court was delivered by

VALENTINE, J.: This was an action of replevin, commenced by the defendant in error, Mary Fuller, against the plaintiff in error, Joseph C. Wilson, to recover a team of horses, harness and wagon.   The answer was, *first*, a general denial; *second*, a justification as sheriff, holding the property under an attachment issued in an action in which one Munkers was plaintiff and L. Abel and Elias C. Boudinot were defendants, and alleging that the property belonged to Boudinot; and *third*, an allegation or plea that there was another action pending in the same court, in favor of the same plaintiff against one· John Secrest for the recovery of the same property, and that Secrest held and justified as the mere bailee and receiptor of the sheriff.   There was no reply.   The action was tried before the court and a jury; and the verdict of the jury and the judgment of the court were for the defendant in error, plaintiff below.

Several questions were raised in the court below and several questions are attempted to be raised in this court, which cannot well be considered on account of the imperfect condition of the record, or perhaps rather on account of the imperfect manner in which the questions were saved and brought to this court.   Objections were made by the defendant below to

the introduction of certain evidence, but as the grounds of the objections were not stated, nor any reason given in the court below why the evidence was not admissible, the court below was probably not bound to consider the objections. This is certainly the rule, with probably some exceptions. (See the authorities cited in brief of counsel of defendant in error.) But in this court counsel for plaintiff in error seem to have abandoned this point, for, although they have assigned it as error in their petition in error, yet they have since made no reference to it, either by oral argument or in their brief, and therefore we shall not consider it, or take any further notice of the same. See Rule 2, rules of this court; *Snyder v. Eldridge,* 31 Iowa, 129, citing *Shaw v. Brown,* 13 Iowa, 508, 510. These cases decide that "errors assigned, which are not presented in argument will not be considered."

*1. Objections to testimony to be stated.*

*2. Assignment of error; waiver.*

Questions are raised in this court upon the instructions given and refused by the court below to the jury. But as the record does not purport to contain all the instructions given or refused we cannot well determine whether the court below erred to the prejudice of the plaintiff in error, or not. This is especially true with regard to those refused. The defendant below asked seven instructions, five of which were refused and two were given with certain modifications. Those refused may have been refused because the court in its general charge had already given them to the jury. If so, the court certainly did not err: *Topeka v. Tuttle,* 5 Kas., 312, 322; *Gillett v. Corum,* 7 Kas., 156; *Kansas Ins. Co. v. Berry,* 8 Kas., 159; *Abeles v. Cohen,* 8 Kas., 180; *Lobenstein v. Pritchett,* 8 Kas., 213. There is nothing in the record that would preclude such a presumption except that the most of the instructions refused are not good law, and could not be legally given either in this or in any other case. Nearly all the matters upon which the defendant below asked the court to charge were questions

*3. Reviewing alleged errors; incomplete record.*

of fact, which came exclusively within the province of the jury to determine, and were not questions of law at all, such *4. Instructions upon disputed facts.* as come within the province of the court to determine and to give to the jury. They were disputed facts, controverted by both the pleadings and the evidence. The court would have committed manifest error if it had given said instructions.

The defendant below objected to the modifications of those two instructions which the court gave. The record states *5. Modifying instructions.* that one was the "statutory modification." What that "statutory modification" is or was the record does not disclose; and what the parties or the court imagined it to be we are unable to determine. But as it was a "statutory modification" we suppose it was correct. The modification to the other instruction was substantially as follows: The defendant below asked the court to charge substantially that if the sale of the two horses was made by Boudinot to the plaintiff with the intent to defraud the government, the sale was void. The court so charged, but also so modified the instruction as to substantially say that *6. Sales; intent of vendor and vendee. Title of bona fide purchaser.* the sale was not void unless the plaintiff below purchased the property with the like intent. This modification was not erroneous. If the plaintiff was a *bona fide* purchaser, the sale was valid as to her although Boudinot may have intended to defraud the government. But suppose the plaintiff also intended to defraud the government: would the sale be void for that reason in favor of any person except the government? Could any person not defrauded nor intended to be defrauded take the property away from the plaintiff, and make it his own, simply because the plaintiff intended to defraud the government? Such has not heretofore been supposed to be the law. The record contains four instructions which the court gave on its own motion. We perceive no error in either of them. With reference to the fourth however we might perhaps go further, and say, that if Mrs. Fuller was a

*bona fide* purchaser of the property without notice of any fraudulent intentions on the part of the person from whom she bought it, the sale was valid as to her, although Boudinot may have sold her the property with the intent to defraud his creditors; *Diefendorf v. Oliver*, 8 Kas., 365; and this is substantially what the court charged in said instruction. What other instructions were given besides those we have already mentioned, the record does not show.

It is claimed that the transfer of the horses from Boudinot to Mrs. Fuller was simply a gift either to her or to her husband, Perry Fuller. But how it is expected that we shall now determine that it was only a gift we cannot well understand. The question is a question of fact. It was submitted to the jury upon some evidence tending to prove that a consideration passed, and that the transfer was not a gift. The jury determined the question (as well as all other questions) against the plaintiff in error. It is presumed that the question was presented to the jury upon proper instructions; for where the record does not purport to contain all the instructions, and where those given by the court to the jury which it does contain are not erroneous, it must always be presumed that the proper instructions were given, and how we are now to determine against the verdict of the jury, and the judgment of the court below, when no objection to either was made in any form in the court below, is beyond our comprehension. If the verdict of the jury upon this or any other question was not sustained by sufficient evidence why did not the plaintiff in error move to set aside the verdict, or for a new trial, for that reason? and then, if the motion were overruled, bring the whole of the evidence upon that point, instead of a part of it, to this court? Of course it will be admitted that Boudinot could not give away his property even to an innocent party so as to hinder, delay or defraud his creditors; but that question is not before us.

That the evidence amply sustained the verdict must be

*(margin note: 7. Facts settled by verdict, how and when reviewable.)*

presumed, for no motion was made to set aside the verdict or for a new trial. But whether the evidence did

*8. Instructions; presumption; saving "all the testimony."*

sustain the verdict or not we cannot tell, for the record does not purport to contain all the evidence. It is true, that the record states that the evidence it contains "is all the evidence given on such trial which is material to the questions sought to be raised in this case." But it could not have been supposed that any question would be raised in the supreme court with regard to the sufficiency of the evidence to sustain the verdict, for no such question was raised in the district court. The record itself shows in another place that some of the evidence was left out of the record. With such a record, although it might seem that some material fact was not sufficiently proved, still it would have to be presumed that. it was sufficiently proved. We think however, from the record as it is, that there was some evidence to prove every material fact in favor of the plaintiff below, and sufficient evidence to sustain the verdict.

· We find in the brief of plaintiff in error the following: "The defense stands admitted for lack of a reply, and the

*9. What questions will not be reviewed.*

verdict against the admissions is error." No question of this kind was raised in any manner in the court below, and being raised for the first time in this court it will of course be looked upon with great disfavor. The rule is, that the supreme court will hear and determine such questions only as have been passed upon by the court below: *Sleeper v. Bullen*, 6 Kas., 300, 309, 310. See also in this connection the following cases: *Green v. Dunn*, 5 Kas., 254, 260, and cases there cited; *Greer v. Adams*, 6 Kas., 203; *Moore v. Wade*, 8 Kas., 380; *Cooley v. Wilkins*, 6 Barb., 558, and cases there cited, in brief of counsel for defendant in error. The rule above stated has its exceptions, or apparent exceptions, but this case does not as we think present one of the exceptions. A trial was had in the court below in all respects as though a reply had been filed, as though the

*10. Pleadings; when reply is · waived.*

answer was controverted, and as though the issues had all been properly made up. The attention of the court was never called to the fact that no reply had

been filed.   No one seems to have even suspected that the issues were not all properly made up, or that the plaintiff below was in default for want of a reply, until the case reached this court.   And now we think it is too late for the plaintiff in error to complain.   We cite the following authorities in support of this view, some giving one reason and some another: 1 Chitty Pl., 621; Comyn Dig., *Pleader, G.,* 22; *Woods & Hobart v. Morgan,* Morris, Iowa, 179; *Sigler v. Woods,* 1 Iowa, 177; 1 Ill., (Breese,) 35; 17 Ill., 166; 21 Ill., 559; 22 Ill., 140.   See also, *Shirts v. Irons,* 28 Ind., 458, and cases there cited; *Irvinson v. Van Riper,* 34 Ind., 148.   These last cases decide that parties waive reply by going to trial without it.

But was a reply necessary?   We think not.   We suppose it will be admitted that a reply is not necessary where the answer is only a general denial, or where the answer in effect amounts only to a general denial, or where the answer states no defense to the action; for such is clearly ·the law.   Now, as the first defense stated in the answer was only a general denial, and as the third supposed defense stated no defense to the plaintiff's action, we suppose it will be admitted that no reply was necessary as to these.   The only question then to be considered is, whether a reply was necessary as to the second defense. The rules of the common law have scarcely any application in this state to an action of replevin.   The action is almost exclusively statutory, and differs widely from the old common-law action.   The plea *non cepit,* or, *non cepit modo et forma, etc.,* or, *cepit in alio loco,* would under our code tender a wholly irrelevant and immaterial issue, and would constitute no defense to the plaintiff's action.   The action resembles more the old common-law action of detinue than it does that of replevin, and the plea *non detinet* would now be a good defense to our action of replevin.   In our statutory action of replevin the gist of the action is the *wrongful detention* of the property in controversy *on the part of the defendant* as *against the plaintiff.*   And the plaintiff in order to maintain the action must plead and prove, if ·the

facts be controverted, first, that he owns or has a special own-ership or interest in the property; second, that he is entitled to the immediate possession of the same; and third, that the property is wrongfully detained by the defendant. The defendant cannot *wrongfully* detain property as against the plaintiff unless all these facts exist; and without their exist-ence no action of replevin can be maintained. The plaintiff must necessarily set forth all these facts in his petition, and a general denial on the part of the defendant puts them all in issue, and throws the burden of proving them upon the plain-tiff. In this respect the general denial in our action of replevin is very similar to the plea of *non detinet* in an action of detinue at common law. "In detinue the general issue was *non detinet*, which put in issue the facts of the plaintiff's property or possession, and the defendant's withholding the chattels." (1 Chitty's Pl., 525, edition of 1833, and page 488 of later editions; Coke upon Littleton, 283*a; Phillips v. Robinson*, 4 Bingham, 111, 112; 13 Eng. Com. Law, 424, 425.) The common law was however changed in England in 1832 by a rule of the court (one of the rules which Chitty calls the "recent rules,") adopted under the English statutes, which rule took effect in 1834. (1 Chitty Pl., Appendix, 743.) We might here notice another resem-blance between our action of replevin and the common-law action of detinue. In detinue "The judgment was in the alternative, that the plaintiff do recover the goods, or the value thereof if he cannot have the goods themselves, and his damages for the detention, and his full costs of suit." 1 Chitty Pl., 125; Comyn Dig., *Pleader*, 2, 12; Bacon's Abr., *Detinue;* Jacob's Law Dic., *Detinue*. In our action of replevin the judgment is in the alternative. This was not so in a common-law action of replevin. With all these differences, and more that we might mention, we should be careful not to be misled by common-law authorities concerning the action of replevin. As to what issues a general denial in replevin tenders, and as to what may be proved under it, etc., we would refer to the following authorities: *Oaks v. Wyatt*, 10

Ohio, 344; *Ferrill v. Humphrey*, 12 Ohio, 112; *Loomis v. Foster*, 1 Mich., 165; *Snook v. Davis*, 6 Mich., 156; *Craig v. Grant*, 6 Mich., 447; *Walpole v. Smith*, 4 Blackf., 304; *Jansen v. Effey*, 10 Iowa, 227, 231; *Ford v. Ford*, 3 Wis., 399. These decisions were rendered in states where the action of replevin is principally statutory, and we think they sustain our views on this question. Whether the defendant can have a judgment for affirmative relief unless he prays for it in his answer, we do not now choose to decide; (see *Gould v. Scannell*, 13 Cal., 430;) and whether, if he does pray for such relief in his answer, he can then show that he did not detain or have possession of the property at all, we express no opinion. All that we now desire to say is, that a defendant in replevin may append a prayer for affirmative relief to an answer which contains only a general denial, as well as to any other answer; and if he does so, he may then have upon a verdict in his favor a judgment not only for costs but also a judgment for the proper affirmative relief. .

The second defense set forth in defendant's answer was in effect only a general denial. The defendant had no right to prove a single fact under it that he could not have proved under his general denial. Under his general

13. Allegation of property in third person needs no reply.

denial he could show that the plaintiff was not the owner of the property, or that he had no interest therein; and this he could do by showing that Boudinot, or himself, or some other person, was the legal owner of the entire interest in the property. Under his general denial he could show that the plaintiff was not entitled to the immediate possession of the property; and this he could do by showing that himself, or some other person, was entitled to the exclusive possession thereof. Under his general denial he could show that he did not wrongfully detain the property; and this he could do by showing that he rightfully detained the same, or that he did not detain it at all, but that some one else detained it. Said second defense therefore simply *denies* that the plaintiff was the owner of the property, or that he had any interest therein,

by alleging that the defendant and Boudinot had the entire interest therein, Boudinot being the general owner, and the defendant having a special ownership or interest therein. It *denies* that the plaintiff was entitled to the immediate possession of the property, because it alleges that the defendant was entitled to the exclusive possession thereof. It *denies* that the defendant wrongfully detained the property, because it alleges that he rightfully detained it. We suppose it will not be claimed that a plea which amounts only to a general denial needs a reply; but for authorities see brief of counsel for defendant in error; and for this exact case we would refer to *Craig v. Davis*, 6 Mich., 447.

It is also claimed that the court below erred in rendering a judgment absolutely for the value of the property, instead of rendering the judgment in the alternative, for the property itself, or for the value thereof in case a delivery of the property could not be had. This claim is correct. The court did so err. The judgment should have been rendered as the plaintiff in error claims. (See authorities cited with reference to the judgment in common-law actions of detinue, *supra;* also, Gen. Stat., 663, code, § 185; *Smith v. Phelps*, 7 Wis., 211; *Rose v. Tolly*, 15 Wis., 443; *Robinson v. Keith*, 25 Iowa, 321, 323; *Hall v. Jenness*, 6 Kas., 356, 365, and cases there cited; *Hunt v. Robinson*, 11 Cal., 277.) But there was no exception to this judgment, no motion to set it aside, or

14. Errors not assigned will not be examined.

for a new trial; and the court was not asked by motion or otherwise to have the judgment entered in the alternative. If our rules of practice were the same as the rules of practice upon this subject are in Iowa we would not for these reasons examine this question. In the case of *Robinson v. Keith*, supra, the court say: "There was a general exception to the judgment, but the court was not asked by motion or otherwise to enter the alternative judgment. Under this general exception appellant cannot be heard to allege objections to the form of the judgment." But our rules of practice upon this subject differ from those of Iowa. We review the form and substance of a

final judgment, and correct all substantial errors therein, whether the judgment has been excepted to in any form or not. (*Lender v. Caldwell*, 4 Kas., 339, 347; *Koehler v. Ball*, 2 Kas., 160, 169, and cases there cited.) But while the plaintiff in error complains in his brief of this judgment being rendered as absolute, and not in the alternative, yet he has not assigned the same as error in his petition in error, and therefore we shall take no further notice of the question. We consider no rulings of the court below except such as are assigned for error. The judgment of the court below is affirmed.

All the Justices concurring.